UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

RUSSBEER INTERNATIONAL LLC

                Plaintiff,

                                                NOT FOR PUBLICATION
      -against-                          **MEMORANDUM & ORDER**

OAO BALTIKA BREWING COMPANY       07-CV-1212 (CBA)

                Defendant.

-------------------------------------------------------X

AMON, United States District Judge.

        Plaintiff Russbeer International LLC ("Russbeer"), a New York beer wholesaler, has filed suit against OAO Baltika Brewing Company ("Baltika"), a Russian brewer and distributor. Russbeer alleges that it entered into an agreement with Baltika to work as a brand agent for Baltika beverages in the United States, and that Baltika wrongfully terminated this agreement in violation of Section 55-c of the New York Alcoholic Beverage Control Law. The defendant has moved to dismiss the complaint. For the reasons set forth below, defendant's motion to dismiss is granted.

**I.    Background**

        On February 9, 2000, Russbeer was appointed by Baltika as a brand agent for a number of Baltika products in the United States ("2000 Brand Appointment Letter"). (Berkovich Dec. Exh. A.) The appointment was for a three year period ending in 2003. In the 2000 Brand Appointment Letter, Baltika granted Russbeer power of attorney "in matters of compliance and registration of such brands in the United States and to enter into contracts with such wholesalers and agents, on our behalf, assigning and designating territories wherein such wholesalers and

1

agents may sell and deliver the beer." (Id.)  After obtaining required permits and licenses to import Baltika brands into the United States, Russbeer began importation and distribution in New York at the end of 2001.

On April 24, 2002, Russbeer and Baltika entered into an agreement for the purchase and sale of Baltika beverages during that year ("2002 Sale and Purchase Agreement").  (Am. Compl. ¶ 19; Davidson Dec. Exh. B.)  Under the terms of the Sale and Purchase Agreement, Baltika agreed to supply $200,000 worth of Baltika beverages to be purchased by Russbeer.  The agreement provided that transfer of the goods would take place at the "shipping point" and that delivery would be deemed made when the buyer signed "shipping documents." (Davidson Dec. Exh. B ¶¶ 7.1, 7.2.)  It was further specified that the beverages were sold FOB ("free on board") or FCA ("free carrier") St. Petersburg, meaning that the goods, as well as the risks and transportation costs, were transferred from Baltika to Russbeer in St. Petersburg at the address of the Baltika Brewery listed in Paragraph 1.1 of the agreement.  (Id. ¶ 1.1.)  The agreement did not specify the final destination of the goods.

The parties entered into another Sale and Purchase Agreement on January 1, 2003, specifying the terms and conditions for Russbeer to purchase another $200,000 of Baltika beverages during that calendar year ("2003 Sale and Purchase Agreement").  (Am. Compl.¶ 20; Davidson Dec. Exh. C.)[1]  The 2002 and 2003 Sale and Purchase Agreements include a provision

---

[1]  Although the 2002 and 2003 Sale and Purchase Agreements are referenced in the Amended Complaint, Russbeer has not provided those documents to the Court.  The Court nevertheless may consider them in deciding this motion as the documents have been "incorporated by reference" in Russbeer's complaint. See e.g. Stuto v. Fleishman, 164 F.3d 820, 826 n.1 (2d Cir. 1999) (finding the district court's consideration of a document on a motion to dismiss permissible because the document was discussed in the Complaint, and thus incorporated by reference).  As these documents were originally executed in Russian, the Court relies on

for arbitration which reads: "All disputes or disagreement that may arise over the course of the performance of this Contract, or in connection therewith, shall be subject to review before the Court of Arbitration of the City of St. Petersburg and the Leningrad Region.  The judgments of the Court shall be final and binding on both parties." (Davidson Dec. Exh. B, C at ¶¶ 11.1.)  The agreements also contained a provision stating that "The Contract may be unilaterally terminated early at the request of either Party, about which a written notice must be prepared and signed by an individual who is authorized to do so on behalf of the Seller." (Id. at ¶¶ 13.7, 13.5.)

On February 10, 2003, Baltika issued a new Brand Appointment Letter under the same terms as the 2000 letter, for an additional period of three years ("2003 Brand Appointment Letter"). (Am. Compl. ¶ 23; Berkovich Dec. Exh. B.) [2]  Through a supplemental agreement dated December 29, 2003 ("Supplemental Agreement"), Russbeer and Baltika extended the term of the 2003 Sale and Purchase Agreement to July 1, 2003 through July 1, 2004. (Am. Compl. ¶

---

translations submitted by Russbeer in connection with its motion for a default judgment in State Court, provided by Baltika as Exhibits to the Declaration of Stephen P. Davidson. (See Davidson Dec. Exhs. B, C.)

[2]  The 2003 Brand Appointment Letter, addressed to the Brand Label Registration Unit, reads in its entirety:

> Baltika Brewery, the brand owner and producer of the Baltika #1, #3, #4, #6, #9 Beer brands does hereby appoint and authorize Russbeer Importers, LLC as our brand agent for the above mentioned brands on all territory of the United States.
>
> We hereby grant Russbeer International, LLC Power of attorney in matters of compliance and registration of such brands in the Untied States and to enter into contracts with such wholesalers and agents, on our behalf, assigning and designating territories wherein such wholesalers and agents may sell and deliver beer.
>
> The validity of this letter is 3 (three) years.

21; Davidson Dec. Exh. E.)

In or about June 2004, before the expiration of the Supplemental Agreement and the 2003 Brand Appointment Letter, Russbeer alleges that Baltika wrongfully terminated their commercial relationship. According to the Complaint, an agreement between the parties regarding Russbeer's position as Baltika's brand agent had been formed based on the 2000 and 2003 Brand Appointment Letters as well as communications during the course of commercial dealings. In view of this agreement, Russbeer claims that Baltika failed to comply with provisions of Section 55-c of the Alcoholic Beverage Control Law that governs termination and modification of distributorship and wholesaler agreements and arrangements. The statute provides that agreements between "brewers" and "wholesalers" can only be terminated for "good cause." See N.Y. Alco. Bev. Cont. L. (McKinney 2006) (hereinafter "ABCL") § 55-c(2)-(5).

On October 28, 2004, Russbeer filed a complaint in the Supreme Court for the State of New York, Kings County, alleging violations of Section 55-c of the ABCL. Baltika removed the case to this Court on March 21, 2007. Russbeer filed an Amended Complaint on May 1, 2007, requesting damages in the amount of 1.85 million dollars based on lost business opportunities from Baltika's allegedly wrongful termination. Baltika now moves to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**II.    Standard of Review**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed "for failure of the pleading to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S.Ct. 2197, 2200

(2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the. . . claim is and the grounds upon which it rests.'" Id. (citing Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965-66 (2007). The Second Circuit has observed that the standard articulated by the Supreme Court in Twombly remains somewhat uncertain but notes that, "at a bare minimum, the operative standard requires the "plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quoting Commc'ns., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir.2007); Twombly, 127 S.Ct. at 1965).

When determining the sufficiency of a complaint for Rule 12(b)(6) purposes, "consideration is limited to the factual allegations in plaintiffs' [ ] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citations omitted). See also I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir.1991) (district courts may consider documents submitted by a defendant on a motion to dismiss if the documents are explicitly relied on in and integral to the plaintiff's complaint). The Court will draw all reasonable inferences in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).[3]

## III. Discussion

In moving to dismiss the complaint, Baltika argues that Russbeer fails to state a cause of

---

[3] The Court notes that plaintiff has not challenged the use of the Rule 12(b)(6) standard to consider this motion.

action under Section 55-c of the ABCL and that the 2003 Sale and Purchase Agreement contains a mandatory forum selection clause that applies to Russbeer's claims. The Court addresses only Baltika's forum selection clause argument, as the decision on that issue renders the other claim moot.

### A. Forum Selection Clause

Baltika contends that the forum selection clause contained in the 2002 and 2003 Sale and Purchase Agreements and extended by the Supplemental Agreement applies to Russbeer's claim against Baltika. The clause provides that disputes "arising over the course" or "in connection" with the Agreements are to be litigated in Russia. (Davidson Dec. Exh. B, C at ¶¶ 11.1.) According to Baltika, Russbeer is attempting to avoid the requirements of the forum selection clause by asserting that its claim arises out of Baltika's allegedly "wrongful" termination of the 2003 Brand Appointment Letter alone. Baltika's primary argument in support of its position is that any claim Russbeer may have for breach of the 2003 Appointment Letter necessarily arises in connection with the 2002 and 2003 Sale and Purchase Agreements, and is therefore controlled by their terms.

In response, Russbeer contends that the forum selection clause contained in the 2002 and 2003 Sale and Purchase Agreements does not apply to the instant dispute. Russbeer argues that it does not claim the breach of any contracts governing specific shipments of beer, but rather wrongful termination of its 2003 Brand Appointment Letter and its New York distributorship of Baltika brand beers.[4]

---

[4] The Court notes that Baltika additionally argues that the 2003 Brand Appointment Letter does not constitute an "agreement" for the purposes of Russbeer's claim under Section 55-c of the ABCL. This opinion does not reach that argument and, for the purposes of the Court's

### 1. Legal Standard

Parties may consent to personal jurisdiction through forum-selection clauses in contractual agreements. See Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16 (1964) ("And it is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court."). Although forum-selection clauses are regularly enforced, Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991), the Second Circuit has established that several conditions must be met prior to their application. See, e.g. Phillips v. Audio Active Ltd., 494 F.3d 378 (2d Cir. 2007); D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006).

First, a court must determine that the existence of the clause was reasonably communicated to the parties. See Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 9 (2d Cir.1995). Second, the clause must be classified as mandatory or permissive, "i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so." Phillips v. Audio Active Ltd., 494 F.3d at 383 (citing John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc., 22 F.3d 51, 53 (2d Cir.1994)). Third, the court must inquire whether the claims and parties involved in the suit are subject to the forum selection clause. See, e.g., Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1358-61 (2d Cir.1993). If the forum clause was communicated to the parties, has mandatory force, and covers the claims and parties involved in the dispute, it is presumptively enforceable. See id. at 1362-63.

Finally, the court must ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be

---

forum selection analysis, it assumes without deciding that the 2003 Brand Appointment Letter would support a claim under the statute.

unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972) (establishing federal standard relating to enforcement of forum clauses applicable in admiralty and international transactions); Bense v. Interstate Battery Sys. of Am., Inc., 683 F.2d 718, 721 (2d Cir.1982) (applying Bremen standard to contractual dispute between domestic parties in non-admiralty context). "A plaintiff who brings [a] suit in a forum other than the one designated by [a] forum selection clause carries the burden to make a strong showing in order to overcome the presumption of enforceability." Greater New York Auto. Dealers Ass'n v. Envtl. Sys. Testing,Inc., 211 F.R.D. 71, 84 (E.D.N.Y. 2002). Where forum selection clauses "grow out of arms-length negotiations between sophisticated business persons, such a showing is difficult to make." Faberge USA, Inc. v. Ceramic Glaze, Inc., No. 87 Civ. 5780, 1988 WL 31853, at *3 (S.D.N.Y. Mar. 28, 1988) (citing M/S Bremen, 407 U.S. at 12.).

Forum selection clauses often include language specifying that matters that "arising out of" or in "connection" with the performance of the contract will be governed by its terms. When "arising out of," "relating to," or similar language appears in a forum selection clause, "such language is regularly construed to encompass securities, antitrust, and tort claims associated with the underlying contract." Credit Suisse Sec. (USA) LLC v. Hilliard, 469 F.Supp.2d 103, 107 (S.D.N.Y. 2007) (citing Roby v. Corp. of Lloyd's, 996 F.2d at 1361).

A party may not evade a forum selection clause by strategic or "artful" pleading. See e.g., Roby v. Corp. of Lloyd's, 996 F.2d at 1360 (in addressing the scope of a forum selection clause, holding that "[w]e refuse to allow a party's solemn promise to be defeated by artful pleading"); Phillips v. Audio Active Ltd., 494 F.3d at 388 (same); Weingard v. Telepathy, Inc.,

No. 05 Civ. 2024, 2005 WL 2990645, at *4 (S.D.N.Y. Nov. 7, 2005) ("A forum selection clause cannot 'be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship.") (citations omitted).

### 2. The Scope of the Forum Selection Clause

The Court finds that Russbeer's claim for breach of its distributorship arrangement is governed by the forum selection clause set forth in the parties' 2003 Sale and Purchase Agreement and extended by the Supplemental Agreement. Russbeer's claim clearly arose "over the course" of the Agreements' performance, or at least "in connection" with the execution of those contracts. To the extent that Russbeer seeks to disavow reliance on the 2003 Sale and Purchase Agreement as the "written agreement" upon which its claim is premised, this appears to be merely an effort plead around the Agreement's forum selection clause.

As an initial matter, Russbeer does not allege an unawareness of the jurisdictional consent clause, as it was included in the 2002 and 2003 Sale and Purchase Agreements. The forum selection clause states:

> All disputes or disagreement that may arise over the course of the performance of this Contract, or in connection therewith, shall be subject to review before the Court of Arbitration of the City of St. Petersburg and the Leningrad Region. The judgments of the Court shall be final and binding on both parties.

(Davidson Dec. Exh. B, C at ¶¶ 11.1.) The plain language of the clause indicates that it is mandatory, requiring the parties to bring the relevant disputes in the designated forum. Russbeer does not allege that the forum selection clause is unreasonable, only that its provisions are inapplicable in the instant case.

The Court finds unpersuasive Russbeer's argument that its did not arise "over the course"

of the Sale and Purchase Agreement's performance, or at least "in connection" therewith. Russbeer claims that Baltika wrongfully terminated its relationship as a brand agent, importer, distributor, and wholesaler in violation of the ABCL; the gravaman of Russbeer's Complaint is that its right to purchase and resell Baltika beer was unlawfully abrogated. (Am. Compl. ¶ 16 ("In or about June 2004, Baltika attempted to terminate and did in fact wrongfully terminate Russbeer as its brand agent, importer, wholesaler, and distributor in the State of New York."); see also Nov. 2, 2007 Tr. at 10 ("[Baltika] terminated our distributorship.").) It is the 2003 Purchase and Sale Agreement, and not the Brand Appointment Letter, that provides the terms under which Russbeer could purchase beverages from Baltika and distribute them in New York. The 2003 Purchase and Sale Agreement sets forth all essential and material conditions of the distributing relationship, including price, quantity, and other terms of sale and delivery. (See Davidson Dec. Exh. B, C at ¶¶ 11.1.)

The wording of the forum selection clause is broad enough to encompass Russbeer's claims in the instant case. The Second Circuit has consistently held that forum selection clauses are to be interpreted broadly and are not restricted to pure breaches of the contracts containing the clauses. See e.g. Roby v. Corp. of Lloyd's, 996 F.2d at 1361 (holding that a forum selection clause applicable to controversies arising "in connection with" a set of contracts detailing the rights and duties of investors vis-à-vis marketers encompassed investors' securities and RICO suit); Bense, 683 F.2d at 720-21 (holding that a forum selection clause applicable to controversies "arising directly or indirectly" from a franchise agreement encompassed franchisee's antitrust suit against franchisor); see also Scherk v. Alberto-Culver Co., 417 U.S. 506 (1974) (holding that a forum selection clause applicable to controversies "arising out of" a

contract for the sale of a business encompassed buyer's securities fraud suit against seller).

The Court, therefore, concludes that Russbeer's claim is subject to the forum selection clause set forth in the 2003 Purchase and Sale Agreement between the parties and is presumptively enforceable. Russbeer, as noted above, does not allege that the forum selection clause is unreasonable or unjust; accordingly, it is fully enforceable in this case. As this case must be dismissed based upon the mandatory forum selection clause, the Court does not consider the other arguments raised by Baltika.

## CONCLUSION

For the reasons set forth herein, the defendant's motion to dismiss is granted. The Clerk of the Court is directed to enter judgment in accordance with this Order and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2008

                                                Carol Bagley Amon
                                                United States District Judge